J. T. BROWN v. SOUTHERN RAILWAY CO.

(Decided May 1, 1900.)

*Damages—Negligence of Fellow Servant Prior to Fellow Servant Act of 1897.*

Injury resulting to the employee of the defendant company in consequence of the negligence and careless disregard of orders by a fellow servant, in 1896, is not to be imputed to the company. *Aliter,* since the passage of the Fellow Servant Act of 1897, chap. 56 (Private Acts).

CIVIL ACTION for damages for injury sustained through alleged negligence of defendant, heard before *Shaw, J.,* at November Term, 1899, of FORSYTH Superior Court. Upon intimation of the Court, that plaintiff could not recover, he submitted to a nonsuit, and appealed.

Statement of case by DOUGLAS, J.

This is an action brought to recover damages for personal injuries received through the alleged negligence of the defendant. At the close of the plaintiff's testimony, his Honor intimated that notwithstanding the similarity between No. 64 and the expected train, in situation, signals and numbers, he would hold that the defendant company was not negligent in failing to notify section 3 of train No. 44 that the train with an engine No. 64 would be on the side track at Lexington. Upon this intimation the plaintiff submitted to a nonsuit and appealed. The material facts appear to be as follows:

"The defendant company was running a freight train north from Salisbury, N. C., to Greensboro, N. C. The train number was 44, and running in six sections, and entitled respectively 3d, 4th, 5th and 6th sections of train No. 44.

"Said trains were under orders given to each section, and to all others running between Salisbury and Greensboro.

"Plaintiff was the fireman on train entitled 3d section of train No. 44, having an engine, No. 37.

"The orders given to conductor and engineer of 2nd and 3d sections of train No. 44—the 3d section being the train on which plaintiff was serving—were as follows: That an extra train from Greensboro to Salisbury, having engine No. 54, had the right of track over 2nd and 3d sections of train No. 44 from Greensboro to Lexington. The trains run according to numbers, No. 1 going as first and so on.

"As plaintiff's train, to-wit, 3d section of train No. 44, approached the siding at Lexington, the engineer and plaintiff saw a train standing on the siding to the left hand. Said train, so standing on the siding, showing white lights, denoting extra, had steam up and head light burning, and an engine, No. 64.

"That plaintiff's train slowed up, but did not stop, the engineer and plaintiff read the figures 64 on said engine as 54, and supposing it was extra train No. 54 which they were ordered to stop for at Lexington, and having no notice that train with engine No. 64 would be standing at Lexington, and not seeing the 2nd section of train No. 44 standing ahead at Lexington, and supposing it had gone by, passed on by Lexington, and about two miles north of Lexington collided with extra train, having engine No. 54, which was the identical train they were ordered to stop and await the arrival of at Lexington.

"In this collision, plaintiff was injured, and brought this action to recover damages."

Among other allegations, the complaint says:

"That on approaching the station at Lexington, there was, as plaintiff was informed and believes, a mixed train stand-

BROWN *v.* RAILWAY CO.

ing on siding, attached to engine 64, of which they had no notice nor orders, and the figures 64 being so similiar to the figures on engine 54, which they expected to find on said siding, that they passed on without stopping, it being in the night time and the figures on the engine being read by artificial light."

. It appears that the plaintiff's train was a section of the regular train, and therefore, when within its schedule time, had a right of track superior to all extra trains unless limited by special order.   Among the rules of defendant company in the record we find the following:

"Train Orders, 120.   Conductors and engineers will be held equally responsible for the violation of any of the rules governing the safety of their trains, and they must take every precaution for the protection of their train, even if not provided for by the rules."

"95.   No train must leave a junction, a terminal, or other starting point, or pass from double to single track, until it has ascertained that all trains due, which have the right of track over it, have arrived or left."

"522.   A train or any section of a train must be governed strictly by the terms of the orders addressed to it, and must not assume rights not conferred by such orders.   In all other respects it must be governed by the train rules and time tables."

"82.   All extra trains are of inferior class to all regular trains of whatever class.   When the train of inferior right has reached the designated point, the order is fulfilled and the train must then be governed by time-table and train rules or further orders."

*Messrs. Watson, Buxton & Watson,* for appellant.
*Messrs. Glenn & Manly,* and *W. M. Hendren,* for appellee.

DOUGLAS, J., (after stating the facts). The injury occurred on the 2nd day of November, 1896, before the Fellow Servant Act of 1897, and therefore the negligence of the engineer, who was the fellow servant of the plaintiff, is not imputable to the defendant.

The case was ably and candidly argued, and it is admitted that the negligence of the defendant, if any there be, must consist in its failure to notify the plaintiff's engineer that an extra train, drawn by engine No. 64, would be met at Lexington. Had the collision occurred with this train, which we will call No. 64, the case would be essentially different; but its presence at Lexington did not directly cause any injury to the plaintiff, and did not contribute to his injury, except in so far as it tended to mislead the engineer by its similarity in numbers with the train which he expected to meet. It was a singular coincidence that an extra train drawn by engine No. 64 should be standing on the siding at the time and place where the plaintiff's engineer was ordered to pass an extra having engine No. 54; but we do not think that it was anything more than a coincidence. It is true the defendant might have notified the plaintiff's engineer that No. 64 would be at Lexington, and have cautioned him not to mistake it for No. 54. This might have avoided the accident. But could the defendant be reasonably required to anticipate that the engineer would make such a mistake under circumstances of such imminent danger when he had the means of accurate information? In the light of subsequent events, we may say that it was unfortunate that the defendant did not notify the engineer of the presence of No. 64; but we must not forget the old and homely proverb that "Our hind-sights are always better than our foresights."

The engineer could easily have ascertained the difference in numbers by the exercise of reasonable care, which he was

bound to use by the express rules of the company and the inherent responsibilities of his position. He failed to obey the orders of the company, and that failure appears to have been the proximate cause of the accident. As his negligence was not *then* imputable to the defendant, and as we do not think the defendant was required in the exercise of reasonable care to notify the plaintiff engineer of the presence of No. 64, we fail to find any evidence whatsoever tending to prove the negligence of the defendant. The judgment is

Affirmed.